UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHRISTOPHER TRAYLOR,

        Plaintiff,                        Case No. 2:07-cv-50

v.                                          Honorable R. Allan Edgar

RICHARD MILLER, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Physician's Assistant Richard Miller and Registered Nurses Glen Richard, Cathy Williams, Betty Kotila, Gloria Hill, Anne M. Morin, Clara Chosa, Carrie Hyrkas, and Michelle Horton.

Plaintiff alleges that he has been under prescribed medical care for a hip disorder and severe arthritis and has been taking Tylenol for pain since 1977. Plaintiff was transferred from Oaks Correctional Facility to AMF in July of 2006. When Plaintiff arrived at AMF, he was taking Vasotec and Norvasc for high blood pressure, Lovastatin for high cholesterol, Hydrocholorthiazide (water pill), two Tylenol, an unknown allergy pill, Mycolog II cream for skin lesions, and Motrin three times a day with meals. After Plaintiff's arrival, his Tylenol was replaced with Etodolac, his Norvasc was increased from 5 mg to 10 mg, and his allergy medication, Mycolog II and Motrin were cancelled. Plaintiff subsequently wrote numerous grievances concerning not being examined upon his arrival at AMF, his medication being changed, and having medical problems with constipation, and stomach and chest pain. In addition, Plaintiff submitted numerous medical kites requesting treatment for his symptoms.

Plaintiff states that prior to his medication being changed, he had not experienced problems with chest or stomach pain, nor had he suffered from constipation. At some point, Plaintiff refused to take the Norvasc and the pain medication, but he continued to have problems with constipation and stomach and chest pain. Plaintiff claims that Defendants refused to treat his medical problems, to discover the cause of his symptoms, or to allow him to speak to the Regional

Medical Director.  Plaintiff further contends that Defendant Chosa intentionally retaliated against Plaintiff for complaining by having an officer write Plaintiff a substance abuse misconduct for his medication and placing Plaintiff on unit dose medication.  Plaintiff states that Defendant Hill denied his request for medical documents for his disciplinary hearing and that Defendant Williams gave a white inmate several boxes of Metamucil for the same purpose that Plaintiff had sought Metamucil.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.  Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124,

1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, as in *Westlake*, Plaintiff received medical attention on numerous occasions. According to the attachments to Plaintiff's complaint, Plaintiff's medical record was reviewed by the medical service provider on July 12, 2006, at which time it was determined that Tylenol was not necessary because Plaintiff was already taking Motrin for pain, that the Mycolog II was not medically indicated for long-term use, and that the sinus medication was not medically necessary. *See* Step II response to AMF-06-07-02247-12F. In addition, the medical service provider evaluated Plaintiff on August 17, 2006. At this time, Plaintiff complained that the Motrin was not helping, so the medical service provider discontinued it and prescribed Lodine 400 mg two times a day for pain. *See* Step II response to AMF-06-07-02308-12E. On August 21, 2006, a health care request was processed in which Plaintiff complained of problems with his medication. On August 22, 2006, Plaintiff was assessed by the nurse, who instructed him to stop taking the medication. On August 24, 2006, the medical service provider reviewed Plaintiff's record, discontinued the medication, and scheduled Plaintiff for an EKG. Plaintiff's EKG was normal and his medication was renewed. Plaintiff was encouraged to take his medication. *See* Step II response to AMF-06-08-02787-12D3. Plaintiff received an x-ray on October 6, 2006, which was normal. *See* Step II response to AMF-06-10-03373-12F. Plaintiff's medical record was reviewed by the medical service provider on November 3, 2006, and he was evaluated on November 13, 2006. The medical service provider determined that Metamucil was not medically necessary, and that even if it were, it was not necessary to take Metamucil three times a day in order for it to be effective. The medical

service provider further noted that Plaintiff could obtain sufficient amounts of Metamucil from the prisoner store. *See* Step II Response to AMF-06-10-03154-12E1. Plaintiff was instructed to increase his water intake and the fiber in his diet and to exercise. *See* Step II Response to AMF-06-11-03798-12F. On December 21, 2006, Defendant Morin noted that Plaintiff refused to take his Norvasc on a regular basis, and that Plaintiff's medication was restricted due to his history of non-compliance in taking it as prescribed. *See* Step I Response to AMF-06-12-0418-12F. On December 22, 2006, the medical service provider reviewed Plaintiff's medical record and noted that due to potential compliance issues, Plaintiff's medication was to remain restricted for a period of time. Plaintiff was encouraged to comply with the treatment being offered so that his health care needs could be appropriately met. *See* Step II Response to AMF-06-12-0418-12F. Therefore, based on a review of the record, the undersigned will recommend dismissal of Plaintiff's Eighth Amendment claims.

Plaintiff claims that his Fourteenth Amendment due process rights were violated when he was placed on "unit dose" medication as a result of a false substance abuse misconduct. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Hewitt*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). *But cf. Wilkinson v. Austin*, 125 S. Ct. 2384, 2394-95 (2005) (placement in "supermax" facility

sufficiently atypical to implicate due process). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Here, Plaintiff clearly has failed to suggest that his unit dose medication restriction imposes an atypical and significant hardship. Therefore, the undersigned recommends dismissal of Plaintiff's due process claims.

Plaintiff further contends that Defendant Chosa intentionally retaliated against Plaintiff for complaining by having an officer write Plaintiff a substance abuse misconduct for his medication and placing Plaintiff on unit dose medication. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The undersigned notes that Plaintiff has failed to allege any specific facts showing a retaliatory animus on the part of Defendant Chosa. Moreover, as noted above, Plaintiff merely claims that he was placed on unit dose medication as a result of the misconduct. Such a restriction would require that Plaintiff be given his medication one dose at a time. The undersigned concludes

that such a restriction would not deter a person of ordinary firmness from engaging in protected conduct.  Therefore, the undersigned recommends dismissal of Plaintiff's retaliation claim against Defendant Chosa.

Finally, Plaintiff claims that Defendant Williams gave a white inmate several boxes of Metamucil for the same purpose that Plaintiff had sought Metamucil.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).  In the instant action, Plaintiff has failed to plead with any specificity the basis of his equal protection claim.  Plaintiff fails to specify the specific diagnosis of the white inmate, nor does he refer to the results of specific medical tests.  Therefore, the undersigned concludes that Plaintiff has failed to allege that he and the "white" inmate were similarly situated for purposes of the Equal Protection Clause.  Therefore, in the opinion of the undersigned, Plaintiff has failed to state a viable equal protection claim.

**Recommended Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   May 22, 2007

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).